**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Jerome PASSARELLI, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 16, 2001.

Filed Dec. 28, 2001.

Albert J. Flora, Wilkes-Barre, for appellant.

Gerald F. Idec, Asst. Dist. Atty., Tunkhannock, for Com., appellee.

Before: CAVANAUGH, MUSMANNO and OLSZEWSKI, JJ.

MUSMANNO, J.

¶ 1 Appellant Jerome Passarelli ("Passarelli") appeals from the judgment of sentence entered following his conviction of simple assault and endangering the welfare of a child ("EWC").[1] We affirm.

¶ 2 The pertinent facts of this case are as follows. The minor victim S.P., Passarelli's daughter, was 3 months old at the time that her physical injuries were discovered. On January 23, 1997, Karen Passarelli ("Mother"), the wife of Passarelli and mother of S.P., left her home to run errands. During Mother's absence, Passarelli was responsible for S.P.'s care. Upon her return to the home, Mother noticed a bump on the back of S.P.'s head, which she did not have earlier that day. Mother immediately took S.P. to the family physician.

¶ 3 The family physician's assistant saw S.P. He observed a bump and a cluster of black and blue marks under the child's arms. Based on these observations, the assistant directed Mother to take S.P. to Tyler Memorial Hospital.

¶ 4 At Tyler Memorial Hospital, a CT scan of S.P.'s skull was performed, which revealed a possible skull fracture. S.P. was then transported *via* helicopter to Hershey Medical Center. At Hershey Medical Center, further examination revealed 3 broken ribs, which were in the process of healing, a linear skull fracture at the situs of the "bump," hemorrhaging

---

1. 18 Pa.C.S.A. §§ 2701(a)(1) and 4304(a), respectively.

in both frontal lobes of the brain and swelling of the brain.

¶ 5 Suspecting child abuse, Hershey Medical Center immediately made referrals to the Wyoming County Human Services Agency and to the Pennsylvania State Police. When interviewed by the Pennsylvania State Police, Passarelli admitted that he shook S.P. once in the past, "but not violently." During the course of the police investigation, both parents recalled accidental incidents, which they thought might have caused the child's injuries.

¶ 6 At trial, the Commonwealth presented the expert medical testimony of Dr. Dennis Johnson, a pediatric brain surgeon, Dr. Danielle Boal, a board certified pediatric radiologist who was one of S.P.'s treating physicians, and Dr. Isidore Mihalakis, a forensic pathologist. All three testified as to the cause of S.P.'s injuries and the timing of the injuries. Drs. Boal and Johnson testified that "shaken-impact syndrome" was the mechanism that caused S.P.'s injuries. Dr. Mihalakis testified that blunt impact to the back and/or left side of S.P.'s head, with or without shaking, was the mechanism that caused S.P. to sustain bruising, a skull fracture, and subdural and subarachnoid hemorrhages.

¶ 7 At the conclusion of the Commonwealth's case-in-chief, Passarelli moved for judgment of acquittal, which the trial court denied.

¶ 8 The defense then presented expert medical testimony to rebut the theory that "shaken-impact syndrome" was the mechanism that caused S.P.'s injuries. Specifically, the defense offered expert testimony to support its theory that S.P.'s injuries could not have resulted from shaking alone. Dr. Edward Zurad, a defense medical expert, testified during direct examination that he had conducted numerous physical examinations of S.P. since January 23,

1997, the date of the incident, and that he did not find anything abnormal. *Id.* at 869–70. Regarding the timing of S.P.'s injuries, Dr. Jan Leetsma, another defense expert, testified that the symptoms or signs of a child who has an impressive fracture may not be immediate, as suggested by the Commonwealth's experts, and to precisely age and date a skull fracture would be difficult. N.T., 2/21/00–2/29/00, at 738–39, 757–58.

¶ 9 At the conclusion of the evidence, the parties then presented closing arguments. In response to the Commonwealth's closing argument, Passarelli moved for a mistrial, which the trial court denied.

¶ 10 The jury found Passarelli guilty of simple assault and EWC, and not guilty of the charges of aggravated assault and recklessly endangering another person. Prior to sentencing, Passarelli filed another Motion for judgment of acquittal regarding the grading of the EWC charge. The trial court granted this Motion as to the EWC charge graded as a felony three ("F–3") but denied this Motion as to the EWC charge graded as a misdemeanor one ("M–1").

¶ 11 The trial court sentenced Passarelli to a probationary period of 3 years. In addition, the trial court ordered Passarelli to pay a fine in the amount of $500.00 and to perform 100 hours of community service. Passarelli timely filed a post-sentence Motion for new trial challenging the weight and sufficiency of the evidence and the legality of the sentence, which the trial court denied. Thereafter, Passarelli timely filed this appeal.

¶ 12 On appeal, Passarelli asserts the following six issues:

1. The trial court erred in its instruction to the jury, stating that the jury could consider evidence of "rib fractures" when there was no evidence

to show that Passarelli caused the injuries.

2. The trial court erred in denying Passarelli's Motion for mistrial made in response to the prosecutor's closing argument.

3. The sentence imposed on EWC graded as a M–1 is illegal.

4. The Commonwealth failed to prove that the medical opinions on "shaken-impact syndrome" and the timing of the head trauma met the *Frye* standard.

5. The evidence is insufficient as a matter of law to establish that the injuries were non-accidental and that the defendant caused the injuries.

6. The trial court abused its discretion and committed an error of law in denying Passarelli's Motion for new trial based upon the weight of the evidence.

*See* Brief for Appellant at 3–4.

¶ 13 Passarelli contends that the trial court erred in instructing the jury that it may consider evidence of rib fractures. N.T., 2/21/00–2/29/00, 1196–97. He argues that the jury could not consider S.P.'s fractured ribs for any purpose. We disagree.

■ ¶ 14 When reviewing jury instructions, the charge must be considered as a whole, and the general effect of the charge controls. *Commonwealth v. Gibson*, 547 Pa. 71, 91, 688 A.2d 1152, 1162 (1997); *Commonwealth v. Myers*, 424 Pa.Super. 1, 621 A.2d 1009, 1013 (1993). The trial court has broad discretion in its phrasing of jury instructions so long as the instructions given adequately reflect the law. *Gibson*, 547 Pa. at 91, 688 A.2d at 1162.

■ ¶ 15 The trial court instructed the jury as follows:

[T]his court has found as a matter of law and as you've heard described in closing arguments that the evidence presented in this trial is insufficient with respect to the child's fractured ribs. In other words, there was no evidence in this court's view directly linking Passarelli to the causing of the fractured ribs whenever they may have occurred. Therefore, when I instruct you about bodily injury or serious bodily injury I am speaking of only the child's head injuries . . . . "

There is one aspect of the trial in which you may consider evidence of the fractured ribs ... you may consider evidence of fractured ribs only insofar as it concerns whether [S.P.] was the subject of shaken baby syndrome or shaken impact baby syndrome but you may not consider the fractured ribs on the issue of serious bodily injury on the charge of Aggravated Assault or bodily injury on the charge of Simple Assault.

N.T., 2/21/00–2/29/00, 1196–97. In sum, the trial court acknowledged that there was no evidence linking Passarelli to S.P.'s rib fractures, a previously-acquired injury, and restricted the consideration of S.P.'s rib fractures to whether S.P. had been subjected to "shaken-impact syndrome." The general effect impressed upon the jury was that only S.P.'s head injuries could be considered in determining the issue of bodily injury. Based on our review of this jury instruction, we conclude that the language utilized by the trial court was proper.

■ ¶ 16 Passarelli next asserts that the trial court erred in denying his Motion for mistrial, which was made in response to the prosecutor's closing argument. Generally, comments made by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they

could not weigh the evidence objectively and render a true verdict. *Commonwealth v. Hawkins*, 549 Pa. 352, 373, 701 A.2d 492, 503 (1997). Prosecutorial misconduct will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. *Id.* at 373–74, 701 A.2d at 503. Moreover, allegedly improper comments by a prosecutor must be examined within the context of defense counsel's conduct. *Id.* at 374, 701 A.2d at 503.

¶ 17 The prosecutor made the following statements during closing argument:

[L]ast Monday the defendant's lawyer stood up in front of you and told you that since January 23, 1997 there has been no evidence of further trauma. The defendant's lawyer is trying to get you to believe that there has been no evidence of further trauma. Therefore, the defendant could not have done this.

* * * * * * * *

[H]e's telling you that he hasn't physically abused [S.P.] since January 23, 1997. In any event how do you know that behind closed doors of this home how do you know he has not physically abused [S.P.] since January 23, 1997.

N.T., 2/21/00–2/29/00, at 1188a.

¶ 18 These statements were made in response to defense counsel's opening statement and closing argument, and the testimony of defense expert witness, Dr. Zurad. In his opening statement, defense counsel stated that there was "no evidence of any further trauma associated with this child." N.T., 2/21/00–2/29/00, at 72. During direct examination of defense expert witness, Dr. Zurad, defense counsel elicited from Dr. Zurad that he had conducted numerous physical examinations of S.P. since January 23, 1997 and did not find anything abnormal. *Id.* at 869–70. Then, during closing argument,

defense counsel made the following statement:

We know that eventually as a result of [the] meeting in Hershey and what had transpired down there that the child had been taken away from the parents and that eventually the child was given back. And, since that time up to the present this child has had a normal growth and development all the while in the custody of [Passarelli] and his wife. We know that this child had a normal growth and development during this period of time because the child continues with medical examinations and treatments. We know this.

N.T., 2/21/00–2/29/00, at 1127.

¶ 19 Having "opened the door" to this subject, Passarelli cannot now complain because the prosecutor chose to further comment on whether there was evidence of any further trauma associated with S.P. *See Hawkins*, 549 Pa. at 374, 701 A.2d at 503.

■ ¶ 20 Furthermore, our law presumes that juries follow the trial court's instructions as to the applicable law. *Id.* Thus, any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury. Following closing arguments, the trial court instructed the jury that none of the closing arguments were evidence and that the Commonwealth always bore the burden of proof and that Passarelli did not have to prove that he is not guilty. N.T., 2/21/00–2/29/00, at 1182–90. Therefore, this claim fails.

¶ 21 Passarelli next contends that the sentence imposed on the charge of EWC graded as a M–1 is illegal because the trial court imposed a sentence on an offense lower than the offense charged in the Information, after granting a Judgment of acquittal on the charge of EWC graded as a F–3. We disagree.

■ ¶ 22 Inquiry into the legality of a sentence is a non-waivable matter, so the issue is properly before us. *Commonwealth v. Kisner*, 736 A.2d 672, 673–74 (Pa.Super.1999). Although the Commonwealth labeled the EWC charge a F–3 in the Information, the descriptive language used in the Information clearly indicated that the EWC charge was a M–1, as it did not allege "course of conduct."[2] Accordingly, regarding the charge of EWC, the trial court instructed the jury as follows:

> The defendant has been charged with the crime of [EWC]. In order to find him guilty of this offense you must find that each of the elements of the crime have been established beyond reasonable doubt. There are four. One, that the defendant endangered the welfare of a child ... by violating a duty of care or protection to her. Two, that the defendant endangered the welfare of the child knowingly. As I've told you before, a person's conduct is knowing when he is aware that it is practically certain that his conduct will cause a particular result. Three, that the defendant at the time was a parent or guardian or person supervising the welfare of the child. And[,] four, that the child was under the age of eighteen years at the time of the conduct. There is no dispute as to that. The child was three months old. If after considering all the evidence you find that the Commonwealth has established beyond a reasonable doubt these elements which I've just stated you should find the defendant guilty of [EWC] otherwise you must find him not guilty.

N.T., 2/21/00–2/29/00, at 1202–03. No motion to amend the Information was made; however, as recited above, the trial court instructed the jury on EWC graded as a M–1.

■ ¶ 23 As we stated in *Kisner*, the grading of an offense is not an element thereof; if an erroneous grading is included in an information, the sentencing court is not bound to sentence according to the error, but may sentence in accordance with the true grading of the crimes alleged and proven. *Kisner*, 736 A.2d at 674. For example, if the elements of a F–1 are averred and proven, but an erroneous labeling of F–2 is in the Information, the sentencing court may sentence as a F–1. *Id.* In *Kisner*, the F–2 charge was expressly stated in the Information and the jury waiver colloquy; therefore, the trial was conducted on a F–2 charge. Thus, this Court concluded that both the trial court and the Commonwealth had locked themselves into a F–2 charge for attempted rape. *Id.* at 674.

■ ¶ 24 However, this case is clearly distinguishable from the circumstances of *Kisner*. Here, the trial court instructed the jury on the M–1 charge, the jury then found Passarelli guilty of EWC, and, accordingly, the trial court denied Passarelli's Motion for judgment of acquittal on the M–1 charge while granting Judgment of acquittal as to the F–3 charge. Based on our review of the record, we conclude that the jury understood that they found Passarelli guilty of EWC graded as a M–1. Accordingly, the sentence imposed was legal.

■ ¶ 25 Passarelli alleges that the prosecutor failed to lay a proper foundation for the Commonwealth's expert medical opinion testimony offered on "shaken-impact syndrome" and the timing of the injuries, as this testimony was subject to

---

**2.** Pursuant to section 4304(b) of the Pennsylvania Crimes Code (relating to grading), where there is a course of conduct of EWC, the offense constitutes a F–3, rather than a M–1.

the *Frye* standard. *See Frye v. United States,* 293 F. 1013 (D.C.Cir.1923). He argues that the trial court should have required a *Frye* hearing to determine if the diagnosis of "shaken-impact syndrome" and the method of determining the amount of time between the onset of the "shaken-impact" and the injuries were generally accepted in the scientific community. However, based on our review of the record, we conclude that this testimony was opinion testimony subject to the standard rules governing expert witness testimony and not "scientific evidence" subject to a *Frye* analysis.[3]

¶ 26 Whether a witness has been properly qualified to give expert testimony is vested in the discretion of the trial court. *West Philadelphia Therapy Center v. Erie Insurance Group,* 751 A.2d 1166, 1167 (Pa.Super.2000). Pennsylvania's standard for qualifying a witness as an expert is rather liberal. If the witness possesses knowledge with regard to subject matter that is beyond the knowledge, information, or skill possessed by the ordinary juror, and that knowledge will assist the jury in understanding the evidence or in determining a fact in issue, the witness may testify as an expert. *Id.* at 1167–68; Pa.R.E. 615. In determining the credibility of the expert witness, the trier of fact is free to believe all, part, or none of the evidence. *Commonwealth v. Carson,* 559 Pa. 460, 741 A.2d 686 (1999). Defense counsel may challenge the expert testimony on cross-examination, but such a challenge goes to the weight to be given the testimony, not to its admissibility. *Commonwealth v. Rodgers,* 364 Pa.Super. 477, 528 A.2d 610, 614 (1987).

¶ 27 When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is "so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman." *West Philadelphia Therapy Center,* 751 A.2d at 1168 (citing McCormick, *Evidence,* 33 (3rd ed.1984)(footnote omitted)). If the subject is of this type, the next question the trial court should ask is whether the witness has "sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for truth." *Id.* (citations omitted).

¶ 28 The diagnosis of "shaken-impact syndrome" refers to a series of injuries to the brain that result from violent shaking of a small child whose weak neck muscles permit tremendous acceleration and deceleration movement of the brain within the skull. *See generally State v. Cruz,* 2000 WL 1026694 at *2 n. 1 (Ohio App. 9 Dist.); *see also State v. Gondek* 2000 WL 109044 at *1 n. 1 (Ohio App. 9 Dist.). When a qualified medical expert witness testifies that a particular child suffered from "shaken-impact syndrome," he or she is giving an opinion as to the means used to inflict the particular injuries, *i.e.,* the types of injuries, their size, number, location and severity. A diagnosis of "shaken-impact syndrome" simply indicates that a child found with the type of injuries described above has not suffered those injuries by accidental means. Thus, such expert testimony shows that the child was intentionally, rather than accidentally, injured.

---

**3.** Pennsylvania has applied the *Frye* standard to scientific evidence, including principle, technique, or test, which requires that such scientific evidence must have acquired a "general acceptance" in the relevant scientific community. *Frye,* 293 F. at 1014; Pa.R.E. 702.

¶ 29 Here, Passarelli does not challenge the Commonwealth's experts' qualifications. Rather, Passarelli's sole contention is that "shaken-impact syndrome," and the method used by the Commonwealth's experts to determine the timing of the injuries were not generally accepted in the medical community, an argument that Passarelli presented to the jury through his own medical expert testimony. As previously discussed, the expert testimony on "shaken-impact syndrome" was opinion testimony, not scientific evidence, offered to show that S.P.'s injuries were intentional. Therefore, we conclude that the *Frye* analysis does not apply, and we, consequently, conclude that Passarelli's contention is without merit.

¶ 30 Passarelli challenges the sufficiency of the evidence as to both offenses. He argues that the evidence was insufficient to prove: (1) that S.P.'s injuries were non-accidental, (2) that a pattern of abuse existed, and (3) that Passarelli caused the injuries. We disagree.

¶ 31 Our standard in reviewing a sufficiency of the evidence claim is that we must view the evidence in a light most favorable to the Commonwealth, and determine whether the evidence presented at trial, including all reasonable inferences that may be drawn therefrom, was sufficient to prove all of the elements of the crime, which the appellant challenges beyond a reasonable doubt. *Commonwealth v. Vining*, 744 A.2d 310, 320 (Pa.Super.2000). Further, we must keep in mind that "[t]he credibility of witnesses and the weight to be accorded to the evidence produced are matters within the province of the trier of fact, who is free to believe all, some or none of the evidence." *Id.* (quoting *Commonwealth v. Perez*, 698 A.2d 640, 645 (Pa.Super.1997)).

¶ 32 Under section 2701(a)(1) of the Crimes Code, a person commits the crime of simple assault when he attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another. 18 Pa.C.S.A. § 2701(a)(1); *see also Vining*, 744 A.2d at 315. A person is guilty of EWC if he is supervising a child under 18 years of age and knowingly endangers the welfare of the child by violating a duty of care, protection or support. 18 Pa.C.S.A. § 4304(a). The Crimes Code defines knowingly as:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves the result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(2). Furthermore, it is clear that section 4304 contemplates endangerment either by act or by omission to act. *Commonwealth v. Miller*, 411 Pa.Super. 33, 600 A.2d 988, 990 (1992).

¶ 33 The record clearly establishes that Mother entrusted Passarelli with S.P.'s care while she ran errands. The Commonwealth presented three medical experts who testified that S.P.'s injuries were not accidental but resulted from either shaking S.P. or from a blunt impact to the back and/or left side of S.P.'s head, with or without shaking. Thus, the act that Passarelli performed on S.P. was not designed to protect, care or support S.P. After a thorough review of the record, we conclude that the evidence was sufficient to sustain Passarelli's conviction for simple assault and EWC.

¶ 34 Passarelli also contends that the trial court erred in denying his

Motion for a new trial because the verdict was against the weight of the evidence. Our Supreme Court has opined that the "decision to grant or deny a motion for a new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court." *Commonwealth v. Simpson*, 562 Pa. 255, 266, 754 A.2d 1264, 1270 (2000); *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745, 753 (2000). A trial court's denial of a motion for a new trial based on a claim that the verdict was against the weight of the evidence will not be disturbed unless the trial court abused its discretion in denying such a motion. *Id.* As stated in *Simpson*, a new trial can only be granted on a claim that the verdict was against the weight of the evidence in the extraordinary situation where "the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Id.* (quoting *Commonwealth v. Brown*, 551 Pa. 465, 711 A.2d 444, 451 (1998)).

¶ 35 Applying the standard to this case, we conclude that the verdict was not against the weight of the evidence because the outcome of the trial below does not shock our sense of justice. *See Simpson*, 562 Pa. at 266–67, 754 A.2d at 1270.

¶ 36 Judgment of sentence affirmed.