J-S29038-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAIME JONES, | : | |
| | : | |
| Appellant | : | No. 1916 WDA 2014 |

Appeal from the Judgment of Sentence Entered September 18, 2014,
in the Court of Common Pleas of Mercer County,
Criminal Division, at No(s): CP-43-CR-0000917-2013,
CP-43-CR-0000919-2013

BEFORE:    PANELLA, MUNDY, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED JUNE 30, 2015**

Jaime Jones (Appellant) appeals from the September 18, 2014 aggregate judgment of sentence of 27 to 75 years' incarceration, entered following his convictions for various offenses stemming from his sexual abuse of his two nephews, K.R. and I.D., and his niece, J.D. We affirm.

The trial court summarized the facts underlying this matter as follows.

> J.D. testified that she and her twin brother, I.D., were born [in January 2004] and that K.R. is their cousin. [Appellant] is their uncle and he sometimes would stay at her house. When she was in first grade, [Appellant] touched her private parts on more than one occasion and had her touch his penis. ... [Appellant] removed her pants and underwear on at least one occasion. [J.D. also testified that Appellant put his private part in her private part.]
>
> I.D. testified that on one occasion [Appellant], while babysitting him, touched his penis and fondled it. The incident occurred when he was in first grade.

*Retired Senior Judge assigned to the Superior Court.

K.R. testified that on one occasion while [Appellant] was babysitting him, [Appellant] touched his "pee pee." After doing so, [Appellant] took K.R. to the bathroom and put his "pee pee" into K.R.'s bottom. [Appellant] then took K.R. downstairs and put his "pee pee" into K.R.'s mouth. This action caused K.R. to choke. After doing so, [Appellant] inserted his penis into K.R.'s bottom. These incidents occurred when K.R. was in first grade.

Trial Court Opinion, 12/18/2014, at 2-3 (footnote omitted).

Based on the above, Appellant was charged with numerous offenses at two different docket numbers, CP-43-CR-0000917-2013 (917-2013), and CP-43-CR-0000919-2013 (919-2013). The cases were consolidated for purposes of trial, which commenced on May 13, 2014. At trial, as part of its case-in-chief, the Commonwealth presented the expert testimony of Nicole Amabile, a licensed, nationally-certified professional counselor who, among other things, has directly counseled approximately 60 child-sexual-assault victims. N.T., 5/13-5/15/2014, at 128, 130. Following trial, the jury convicted Appellant at docket 917-2013 of rape of a child, involuntary deviate sexual intercourse (IDSI) with a child, unlawful contact with a minor, statutory sexual assault, and indecent assault with respect to K.R. At docket 919-2013, the jury convicted Appellant of two counts each of unlawful contact with a minor and indecent assault as to J.D. and I.D.

On September 18, 2014, Appellant was sentenced to an aggregate 27 to 75 years' incarceration. Appellant timely filed post-sentence motions, which the trial court denied. Appellant then timely filed a notice of appeal.

- 2 -

On appeal, Appellant challenges the discretionary aspects of his sentence. Appellant also contends that the trial court erred in permitting the Commonwealth to present the testimony of Ms. Amabile under 42 Pa.C.S. § 5920,[1] without holding a hearing pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

We address Appellant's evidentiary issue first.

> As with other evidentiary decisions, the trial court may exercise its discretion in deciding whether to admit expert testimony. The trial court's decision will be reversed only if the appellate court finds an abuse of discretion or an error of law.
>
> … Pennsylvania continues to adhere to the *Frye* test, which provides that novel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community. The *Frye* test is a two-step process. First, the party opposing the evidence must show that the scientific evidence is novel by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions. If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute.

*Commonwealth v. Foley*, 38 A.3d 882, 888 (Pa. Super. 2012) (citations and internal quotation marks omitted).

Appellant argues that

> [t]he testimony of Ms. Amabile … contains opinions based on the human behavioral sciences of child psychology, child development, human development and pediatric development

---

[1] Section 5920 provides, in relevant part, that in criminal proceedings for sexual offenses, a qualified expert witness "may testify to facts and opinions regarding specific types of victim responses and victim behaviors." 42 Pa.C.S. § 5920(b)(2).

and science. Because the opinions … were as to matters covered by these scientific disciplines, the Commonwealth was required to prove that the witness's opinions were generally accepted in the relevant scientific communities and disciplines of human development and behavioral science."

Appellant's Brief at 20-21.

In addressing Appellant's claim, we find this Court's decision in *Commonwealth v. Passarelli*, 789 A.2d 708 (Pa. Super. 2001), to be instructive. In that case, Passarelli was convicted of simple assault and endangering the welfare of a child for inflicting injuries upon his three-month-old daughter. *Passarelli*, 789 A.2d at 710-11. At trial, the Commonwealth presented expert medical testimony from three doctors as to the diagnosis of "shaken-impact syndrome" and the timing of the child's injuries. *Id.* at 711. On appeal, Passarelli argued that the Commonwealth's expert medical opinion testimony was subject to the *Frye* standard and, accordingly, a hearing should have been held. *Id.* at 714-15. Rejecting Passarelli's argument, this Court held that the doctors' "testimony was opinion testimony subject to the standard rules governing expert witness testimony and not 'scientific evidence' subject to a *Frye* analysis":

> The diagnosis of "shaken-impact syndrome" refers to a series of injuries to the brain that result from violent shaking of a small child whose weak neck muscles permit tremendous acceleration and deceleration movement of the brain within the skull. When a qualified medical expert witness testifies that a particular child suffered from "shaken-impact syndrome," he or she is giving an opinion as to the means used to inflict the particular injuries, *i.e.*, the types of injuries, their size, number, location and severity. A diagnosis of "shaken-impact syndrome"

- 4 -

simply indicates that a child found with the type of injuries described above has not suffered those injuries by accidental means. Thus, such expert testimony shows that the child was intentionally, rather than accidentally, injured.

{ "pageset": "S45

Here, Passarelli does not challenge the Commonwealth's experts' qualifications. Rather, Passarelli's sole contention is that "shaken-impact syndrome," and the method used by the Commonwealth's experts to determine the timing of the injuries were not generally accepted in the medical community, an argument that Passarelli presented to the jury through his own medical expert testimony. As previously discussed, the expert testimony on "shaken-impact syndrome" was opinion testimony, not scientific evidence, offered to show that [the child's] injuries were intentional. Therefore, we conclude that the *Frye* analysis does not apply, and we, consequently, conclude that Passarelli's contention is without merit.

*Id.* at 715-16 (citations omitted).

In the instant case, the Commonwealth elicited the following testimony from Ms. Amabile:

[Commonwealth:] Ma'am, in your training and experience, have you found that a large number of child sexual abuse victims know their abusers?

[Ms. Amabile:] Yes.

[Commonwealth:] Okay. Has it also been your experience that it's common for them to maintain a relationship with this person after the abuse?

[Ms. Amabile:] Yes.

N.T., 5/13-5/15/2014, at 131. On cross-examination, Ms. Amabile testified as follows:

[Appellant's Counsel:] Hi. It's also common, isn't it, for children who claim they've been sexually abused to withdraw from the person they claim is the abuser?

[Ms. Amabile:]  That's not been my experience.

[Appellant's Counsel:]  Are you saying it's not common for children who claim they've been abused by a particular person not to withdraw from the presence of that person?

[Ms. Amabile:]  That's not been my experience, no.

[Appellant's Counsel:]  What about--Isn't it common for children who claim to be abused by a person, to cry when they're in the presence of the abuser or cry about it?

[Ms. Amabile:] No.

[Appellant's Counsel:]  No it isn't common for a child who claims that they've been sexually abused by a person to cry when the person's name is mentioned or when the person is talked about?

[Ms. Amabile:]  No.

[Appellant's Counsel:]  No?  Isn't it common that children who claim that they have been abused by a person clam up or don't talk, don't want to talk when they see the person?

[Ms. Amabile:]  No.

N.T., 5/13-5/15/2014, at 131-32.

Upon review, we conclude that, like the challenged testimony in *Passarelli*, Ms. Amabile's testimony is not "scientific evidence" subject to the *Frye* standard.  Ms. Amabile applied no methodology, novel or otherwise, to reach her conclusions.  Rather, her testimony consisted of personal observations she has made based on her training and experience counseling child-sexual-abuse victims.  As such, it was testimony "subject to the standard rules governing expert witness testimony."  *Passarelli*, 789

A.2d at 715. Thus, the trial court did not err in permitting the testimony without first holding a hearing pursuant to *Frye*.

We now turn to Appellant's discretionary-aspects-of-sentencing claim. Where an appellant challenges the discretionary aspects of a sentence, there is no automatic right to appeal, and the notice of appeal should be considered to be a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007). As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010),

> [a]n appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > … (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (quoting *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)).

Instantly, Appellant timely filed his notice of appeal and properly preserved his discretionary-aspects-of-sentencing claim by including it in a post-sentence motion. Moreover, Appellant has included in his brief a statement pursuant to Pa.R.A.P. 2119(f). Thus, we must determine if Appellant's claim raises a substantial question.

- 7 -

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super. 2013) (quoting *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013)).

In his Rule 2119(f) statement, Appellant claims that his aggregate sentence,

> although within the applicable sentencing guidelines and within the maximum statutory limits for all offenses for which sentences were imposed, presents a substantial question that the effective sentence of imprisonment was not appropriate under 42 [Pa.C.S. § 9781(b)], because … Appellant … had no previous criminal convictions or juvenile adjudications, had served the United States with military service in the New York Army National Guard, and was born on January 5, 1970 making him currently 45 years of age.

Appellant's Brief at 16.

It is unclear whether Appellant contends that, in sentencing him, the court failed either to consider mitigating factors altogether or to consider those factors adequately. However, at the sentencing hearing, Appellant's counsel explained to the court, *inter alia*, that Appellant has "no prior convictions of any kind anywhere," was "currently 44 years of age," and "served his country in the New York and the Army National Guard from 1989

to 1991 with an honorable discharge." N.T., 9/18/2014, at 15-16.[2] Thus, we interpret Appellant's argument to be that the court failed to consider mitigating factors adequately. Such a contention does not raise a substantial question. **Disalvo**, 70 A.3d at 903 ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.") (quoting **Commonwealth v. Downing**, 990 A.2d 788, 794 (Pa. Super. 2010)). Thus, Appellant is not entitled to relief on his discretionary-aspects-of-sentencing claim.

For the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/30/2015

---

[2] The sentencing court also had the benefit of a presentence investigation report (PSI). Thus, we presume that the court was aware of the above information. **See Griffin**, 65 A.3d at 937 ("Where the sentencing court had the benefit of a [PSI], we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.") (internal quotation marks omitted).