J-S20005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JASON VIRGILE | |
| Appellant | No. 2523 EDA 2015 |

Appeal from the Judgment of Sentence July 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000982-2012

BEFORE: BOWES, J., OTT, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 22, 2017**

Jason Virgile appeals from the judgment of sentence of eleven-and-one-half to twenty-three months imprisonment followed by three years probation that was imposed after a jury convicted him of endangering the welfare of a child ("EWOC"). We reject his challenges to the sufficiency of the evidence supporting his conviction and affirm.

Appellant and his co-defendant Leeann Santiago were convicted of endangering the welfare of Santiago's son by a previous relationship, I.V. At the time of the pertinent events, I.V. was living with his sister, Appellant, and Santiago. Appellant's two sons, who were one year old and four years old, respectively, came twice a month to stay at the home.

The Commonwealth's proof was as follows. Aracely Thornton, Santiago's mother, testified that on May 2, 2011, she was babysitting the then two-year-old I.V. at her home in Philadelphia. She noticed bruises on his face between his forehead and his nose and on the front and back of his ear. Since the bruising "was in multiple areas," Ms. Thornton became alarmed. N.T. Trial, 5/26/15, at 81. She went to the police station to report the injuries, and, when Santiago retrieved I.V., Ms. Thornton discussed the injuries with her. Santiago asked I.V. who inflicted the wounds, and he responded, "Jason did it." *Id*. at 105, 106. Ms. Thornton testified that I.V. referred to Appellant as Jason and that there was no one else involved in I.V.'s life, other than Appellant, whose name was Jason. *Id*. at 107.

Santiago took I.V. to the hospital, where he was x-rayed, and called his biological father, Valerie V., who went to the emergency room and observed bruises on I.V.'s head and ear area. Prior to May 2, 2011, Valerie had never observed those types of injuries on his son's face. Valerie asked I.V. how he was hurt, but never received a "clear response." *Id*. at 199. The next time that Valerie was called to the hospital for I.V. was October 25, 2011. At that time, I.V.'s injuries were much more extensive. Specifically, the boy's harm included: a laceration on the top of his head that required staples, "bruises on the both sides of his head near his ears," a "mark, like a patch on his stomach, miscellaneous marks on his thighs, an open sore on

his leg," and also a rib fracture. N.T. Trial, 2/27/15, at 51. I.V. again refused to tell his father how he sustained the wounds.

Due to the nature of I.V.'s harm, on October 25, 2011, hospital personnel immediately suspected that I.V. was the victim of child abuse and called police. Philadelphia Detective Manuel Gonzalez of the Special Victims Child Abuse Unit responded. At the hospital, Detective Gonzalez asked Santiago what had happened, and she replied that I.V. hit a glass table with his head. On October 25, 2011, I.V. was removed from the care of Appellant and Santiago and taken to Ms. Thornton's home. On November 4, 2011, Detective Gonzalez interviewed Santiago about the matter.

Santiago again represented that I.V. hit his head on a glass table while he was playing with his sister and Appellant's two sons, but Santiago was unable to explain how I.V. incurred the remainder of his wounds. She informed Detective Gonzalez that I.V. never came home from his day care center with injuries and stated that she took care of her two children when they were at home. On November 4, 2011, Philadelphia Detective Edward Enriquez interviewed Appellant, who indicated that he did not know how I.V. was hurt.

Melissa Hampton, who worked in Child Protective Services at the Philadelphia Department of Human Services, was assigned to investigate the matter. On October 26, 2011, she went to see I.V. at Ms. Thornton's home. Ms. Hampton interviewed the child and asked how he had sustained his

wounds. Initially, I.V. merely shrugged. When asked about the head laceration, "he said mom did it." N.T. Trial, 5/26/15, at 53. Ms. Hampton next interviewed Appellant and Santiago. Santiago repeated that I.V. sustained the head injury by hitting "his head on the table" in the dining room while he was playing with the three other children in her home and while Santiago was cooking in the kitchen. *Id*. at 55. Santiago also represented that his facial bruising occurred when "she was pulling a T-shirt down over his head." *Id*. at 56. She indicated that she did not know how the leg sore was caused but said that it must have been from a fall. Santiago maintained that the mark on his stomach was a result of the boy scratching himself with a toy. At the time, Santiago appeared "somewhat angry, defensive and somewhat nonchalant about the child's injuries." *Id*. at 57.

When Ms. Hampton discussed the matter with Appellant, he told her that I.V. was injured while he was retrieving his children from their mother's home. Appellant represented that, when he returned with his two boys, Santiago "ran up to him to tell him or show him [I.V.'s] injury, and that he told her to take the child to the hospital." *Id*. at 59. Ms. Hampton noted the discrepancy in Santiago's and Appellant's versions of events in that Santiago said that Appellant's two children were present when I.V. lacerated his head while Appellant stated that the injury in question occurred while he was retrieving his children from their mother's home.

On October 28, 2011, there was a hearing to determine if I.V. and his sister should remain in protective care, and Appellant told Ms. Hampton that he and Santiago were the only adults with "access to [I.V.] in reference to his injuries." *Id*. at 65.

Doctor Maria McColgan testified as an expert medical witness on behalf of the Commonwealth. She saw pictures taken by emergency room physicians of the injuries that I.V. sustained on May 2, 2011. He had "bruises to the right side of his forehead, head, his ear, the bridge of his nose, under his nose, . . . the side of his face, and his cheek." *Id*. at 148. Dr. McColgan testified to a reasonable degree of medical certainty that the described wounds were "inflicted injuries and not consistent with accidental injury." *Id*. at 149.

Dr. McColgan also reviewed the medical records from the October 25, 2011 incident and stated that I.V. had a laceration to his scalp, a healing rib fracture, "linear scars on the back of his legs," and bruising around the ears on both sides of his face and the back of his head. There was no innocent explanation for all these injuries, particularly the rib fracture. She explained that bruising to the ear was not typical in either accidental or self-inflicted injury and was indicative of child abuse. Dr. McColgan concluded to a reasonable degree of medical certainty that the multiple wounds suffered by I.V. on October 25, 2011, was the result of physical abuse. *Id*. at 154.

Based on this evidence, Appellant and Santiago were convicted of EWOC. This appeal followed imposition of the above-described judgment of sentence. Appellant presents one issue for our review: "Did the [jury] commit error by convicting Appellant of endangering the welfare of a child where the evidence at trial was insufficient to establish that Appellant knowingly violated a duty of care to complainant?" Appellant's brief at 2.

Before we address this issue, we must resolve a procedural problem. Appellant was ordered to file a Pa.R.A.P. 1925(b) statement but failed to do so. The trial court concluded that there were no issues preserved for appellate review. As we outlined in *Commonwealth v. Thompson*, 39 A.3d 335 (Pa.Super. 2012), in *Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998), our Supreme Court held that issues not raised in a court-ordered Pa.R.A.P. 1925(b) statement are not preserved for review. *Accord Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005) (affirming *Lord* and holding that all issues are waived where a statement is not filed in a timely manner).

After *Lord* and *Castillo*, Pa.R.A.P. 1925(b) was amended, and it now states that if an appellant "in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement *nunc pro tunc* and for the preparation and filing of an opinion by the judge." Pa.R.A.P. 1925(c)(3). As this Court in *Thompson* observed,

pursuant to this subsection, when a Pa.R.A.P. 1925(b) is not filed or is untimely filed, counsel will be considered ineffective *per se*. **See Commonwealth v. Burton**, 973 A.2d 428 (Pa.Super. 2009); **Commonwealth v. Scott**, 952 A.2d 1190 (Pa.Super. 2008). In such scenarios, the case will be remanded for the filing of the statement *nunc pro tunc* and the preparation of a trial court opinion in response to the statement. Where the court does have the benefit of reviewing an untimely-filed statement and writes an opinion, we do not remand. **Thompson**, *supra*. In **Thompson**, the appellant's Pa.R.A.P. 1925(b) statement was untimely, and the trial court did not have it in time to author a response to the issues raised. We therefore remanded for the trial court to discuss the issues presented in the untimely statement.

In the present case, Appellant did not file a statement, and the trial court did not address the question of the sufficiency of the evidence supporting the EWOC conviction. However, it is established that, "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Sunealitis**, 153 A.3d 414, 419 (Pa.Super. 2016) (citation omitted). In light of our standard and scope of review, we do not find it necessary to remand for preparation of a trial court opinion. We can review the record evidence and decide, as a matter of law, if it was sufficient to establish that Appellant committed the crime of EWOC.

In addressing the merits of Appellant's sufficiency challenge, we observe that:

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

***Commonwealth v. Sunealitis***, ***supra*** at 419 (citation omitted).

The offense of EWOC is defined, in pertinent part, as follows: "(1) A parent, guardian **or other person supervising the welfare of a child** under 18 years of age . . . commits an offense if he **knowingly** endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1) (emphases added). In this case, Appellant challenges that the Commonwealth established the intent element, *i.e.*, that he knowingly endangered Santiago's child's care. He also claims that he did not have a duty of care toward I.V..

We conclude that intent was established herein. On May 2, 2011, I.V. sustained multiple bruising on his face and head, and Dr. McColgan testified that that harm was intentionally inflicted rather than accidentally sustained. The Commonwealth's proof also was that I.V. told his grandmother that Appellant inflicted those wounds. Our Supreme Court has noted that, while the crime in question is a specific intent crime, the "EWOC statute is

necessarily drawn broadly to capture conduct that endangers the welfare of a child." ***Commonwealth v. Lynn***, 114 A.3d 796, 819 (Pa. 2015). EWOC is committed when an adult takes an affirmative action that endangers a child by injuring the victim. ***Commonwealth v. Passarelli***, 789 A.2d 708, 716 (Pa.Super. 2001), *aff'd per curiam*, 825 A.2d 628 (Pa. 2003) (holding that evidence was sufficient to support EWOC conviction where Commonwealth presented expert witness who opined that injuries sustained by child were intentionally inflicted and not the result of an accident). The Commonwealth's proof was that Appellant undertook an affirmative action that endangered I.V.'s welfare by inflicting injuries to his face and the side of his head on May 2, 2011.

We note that Appellant attempts to deflect our attention from the May 2, 2011 incident by suggesting that this case solely involved the October 25, 2011 injuries. We discount this effort as the Commonwealth's evidence clearly pertained to both May 2, 2011, and October 25, 2011. Ms. Thornton's testimony solely related to the May 2, 2011 harm, and she testified that I.V. told her that Appellant had caused the bruising on his face. The Commonwealth presented specific proof from Dr. McColgan relating to the May 2, 2011 bruising, and that expert witness reported that the harm in question was intentionally inflicted. Thus, we conclude that the evidence was sufficient to establish the intent element of EWOC.

We also reject Appellant's position that he owed no duty of care to I.V.. Section 4304 specifically states that anyone who is supervising a child's welfare is guilty of the offense. In **Lynn**, our High Court observed that a person supervising the welfare of a child is anyone who has a duty to either care for, protect, or support a child and that definition includes someone who has been entrusted with the care of a child or exercises a supervisory role in connection with the child. Appellant was an adult in the home occupied by I.V. and was involved in his supervision when I.V. was in that home. Thus, Appellant owed a duty of care to the child within the meaning of § 4304 where he inflicted the multiple bruises to I.V.'s head and face on May 2, 2011.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2017