J-A03030-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL YARD | : | No. 2011 EDA 2024 |

Appeal from the Order Entered July 18, 2024
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0001222-2022

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 22, 2025**

The Commonwealth appeals from the order granting Michael Yard's motion *in limine* to preclude reference to certain of the victim's injuries unless there was evidence presented at trial that Yard may have caused them. We affirm.

The Commonwealth charged Yard with homicide, endangering the welfare of a child ("EWOC"), and aggravated assault of a child less than six years of age, in connection with the death of his three-month-old son, who died from blunt force trauma to the head while at home with Yard.[1] ***See*** Criminal Information, filed 8/3/22. Regarding the charge of EWOC, the Commonwealth alleged that "[Yard] . . . inflicted prior injuries to the minor child resulting in fractured ribs which were observed at [the] time of autopsy

_____

[1] 18 Pa.C.S.A. §§ 2501(a), 4304(a)(1), and 2702(a)(8), respectively.

to have been inflicted several weeks prior to the victim's death." *Id.* at Count 2. An autopsy revealed that the fractured ribs showed signs of healing consistent with trauma occurring two to three weeks before death. *See* Affidavit of Probable Cause, filed 4/8/22, at 2.

Yard sought to exclude testimony regarding the rib fractures. *See* Motion for *Habeas Corpus* Relief, filed 7/1/24, at 3 (unpaginated). He argued the evidence constituted inadmissible prior bad acts, was unfairly prejudicial, and lacked a causal connection to him. He pointed out that "there is no quantum of proof suggesting [Yard] is the cause of the child's fractured ribs" and that "the child had a revolving door of caretakers, any of whom could have been the cause of the child's fractured ribs if an adult or other externality is to blame at all." *Id.* at 4 (unpaginated). He further argued that such evidence was speculative and was offered "to show Mr. Yard had a propensity to strike, injure, or otherwise abuse his child and thus must have inflicted a fatal injury to [the child] on the date of his death." *Id.*

At a hearing on the motion, the Commonwealth alleged that "[t]he rib fractures are relevant . . . to the condition of the body at autopsy." N.T., 7/12/24, at 5. It further explained that there was "a very limited pool of persons that could have had the opportunity to commit the abuse manifested as the rib fractures, and [Yard] would be one of really two people[.]" *Id.* at 9. Relying on **Commonwealth v. Turner**, 421 A.2d 1057 (Pa. 1980), the Commonwealth argued the fractures were indicative of abuse. *Id.* at 12-14. Yard responded that "many other people" were identified during the

investigation of the case as having access to the child, in addition to Yard and the child's mother, including Yard's father and the child's aunt. *Id.* at 20-21.

The trial court concluded that the child's fractures "tend[] to show that the child was abused if committed by [Yard], which then could make it more likely." *Id.* at 22. It stated that "if [Yard] didn't cause the rib fractures, it's not relevant to this case." *Id.* at 23. The court ultimately decided to take the motion under advisement and decide the admissibility of the evidence at trial. *Id.* at 29. It "deem[ed] evidence of the rib fractures irrelevant unless and until evidence is presented connecting [Yard] to the cause – as the cause – as a potential cause or cause of the rib fractures." *Id.* at 30. The court ordered:

> Neither party shall reference or present any evidence or testimony, or make any statements concerning the minor victim's rib fractures during *voir dire*, in opening statements, and until and unless evidence is presented tending to show that [Yard] caused or may have caused the rib fractures sustained by the minor victim.

*Id.* at 29-30; *see also* Order – Motion *in Limine*, filed 7/18/24. This timely appeal followed.

The Commonwealth presents the following issue: "Did the trial court err in excluding evidence of the victim's rib fractures unless or until the court believed, to its satisfaction, that [Yard] was the perpetrator, thus crippling the Commonwealth's presentation of its case to the jury?" Commonwealth's Br. at 4 (suggested answer omitted).

We review evidentiary rulings for an abuse of discretion. *See Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa.Super. 2020). An abuse

of discretion occurs where there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Thompson*, 106 A.3d 742, 754 (Pa.Super. 2014) (citation omitted).

Relevant evidence is admissible if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Pa.R.E. 401 and 402. However, relevant evidence may be excluded "if its probative value is outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 403. Evidence of prior bad acts is "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *Id.* at 404(b)(1). Such evidence may be admitted for other purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." *Id.* at 404(b)(2). When offered for another purpose as outlined by Rule 404(b)(2), "this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

The Commonwealth argues the child's fractures are "relevant to show the condition of the body at autopsy as well to refute the claimed accidental nature of the child's death." Commonwealth's Br. at 24. It notes that the defense theory of the case is that the child "died with, rather than from, his

- 4 -

head (brain) injuries." *Id.* at 25. Based on this theory, the Commonwealth maintains that the child's fractures would indicate "child abuse." *Id.* Citing *Turner* and *Commonwealth v. Earnest*, 563 A.2d 158 (Pa.Super. 1989), it argues that it "is entitled to the inference that [Yard] inflicted that fatal head trauma and since he was one of two caregivers of the victim, he also had the opportunity to cause the rib fractures two to three weeks before death." *Id.* at 24, 33. Additionally, the Commonwealth claims that the evidence is relevant to the EWOC charge since the "course of conduct . . . is an additional fact, a jury question, that impacts the grading of the offense." *Id.* at 36. Finally, it argues that Rule 404(b) is inapplicable since the fractures themselves are "not an 'unrelated crime.'" *Id.* at 35.

The trial court relied on *Commonwealth v. Passarelli*, 789 A.2d 708 (Pa.Super. 2001), to conclude "that if the Commonwealth can show evidence that [Yard] had access to the child at the time the rib fractures occurred and that he was one of two people that was the caretaker of the child during that same time frame, then the evidence may be admissible." Rule 1925(a) Opinion, filed 9/10/24, at 4. It pointed out that "[t]here is no evidence of record proving that [Yard] caused the child's fractured ribs." *Id.* at 3. The Commonwealth, however, claims that *Passarelli* "recognized that the evidence [of the victim's fractures] was relevant despite the absence of a link and utilized a cautionary instruction[.]" Commonwealth's Br. at 32. The Commonwealth maintains that the trial court held "that the evidence is not relevant without proof of [Yard's] link and does not discuss why a cautionary

instruction could not be utilized to ensure that the jury does not improperly consider the evidence." *Id.*

We discern no abuse of discretion. *Turner*, *Passarelli*, and *Earnest*, support the trial court's conclusion. In *Turner*, the Commonwealth challenged the trial court's conclusion that the evidence was insufficient to submit to the jury whether the defendant had inflicted the fatal injury on the child victim. The child suffered his injuries while home with the appellee and the child's mother. The appellee admitted to beating the two-year-old but denied inflicting the injuries that resulted in his death. The child died from blunt force trauma, and the medical examiner testified that blunt force injury can occur from striking the head on an object or the head being struck with an object. *Turner*, 421 A.2d at 1058-59. The child did not have head injuries the night before his death. *Id.* at 1058. The medical examiner explained that in order for the injuries to have been from the child's head striking something, "[t]here would have to have – the head, would have to strike something else probably at least ten different times." *Id.* at 1059. We concluded that "[i]n light of appellee's earlier vicious beatings of the child, . . . the extreme unlikelihood of accidental head injuries under the circumstances presented, the evidence, and reasonable inferences therefrom, [was] clearly sufficient to prove beyond a reasonable doubt that appellant delivered the blows to the child's head." *Id.*

In *Earnest*, the defendant challenged the sufficiency of the evidence to support his conviction for the involuntary manslaughter of a 15-month-old child he babysat. The evidence at trial was that the child sustained the fatal

injury while defendant was alone with her. The defendant contended that the Commonwealth's experts disagreed about the mechanism of injury. We found no true disagreement and explained that regardless of the method of injury, the defendant "was the only one who could have committed the act or acts." ***Earnest***, 563 A.2d at 159. We pointed out that under precedents, a jury may infer that an adult who has "sole custody of a child for a period of time, and, during that time the child suffers wounds which unquestionably are neither self-inflicted nor accidental, . . . that the adult inflicted the wounds." ***Id.*** at 159-60 (quoting ***Commonwealth v. Paquette***, 301 A.2d 837, 840 (Pa. 1973)).

In ***Passarelli***, the Commonwealth charged the defendant with numerous offenses including EWOC and simple assault for physical injuries to a 3-month-old child's head. On the day of the assault, the child's mother had gone to run errands and left the child in the care of Passarelli, the child's father. When the mother returned, she noticed that the child had a bump on the back of her head that was not there previously. The mother took the child to the hospital where it was determined that the child had "a possible skull fracture" as well as "3 broken ribs, which were in the process of healing, a linear skull fracture at the situs of the 'bump,' hemorrhaging in both frontal lobes of the brain and swelling of the brain." ***Passarelli***, 789 A.2d at 710-11. Medical experts determined that the injuries were a result of "shaken-impact syndrome" and blunt impact to the child's head. ***Id.*** at 711. At trial, the court instructed the jury that it could consider the rib fractures for the sole purpose

of determining whether the child "was the subject of shaken baby syndrome or shaken impact baby syndrome[.]" ***Id.*** at 712. It told the jury that it could not consider the fractures to determine if the bodily injury elements of aggravated assault and simple assault were met. On appeal, Passarelli challenged the court's jury instruction, claiming that the jury could not consider the fractures "for any purpose." ***Id.*** We rejected this argument and concluded that the court committed no error and properly limited the jury's consideration of the fractures regarding evidence of shaken baby syndrome.

Unlike in ***Turner***, Yard did not admit to previously abusing the victim, and there is no evidence that the child died because of the fractures. There also is no evidence that at the time the child sustained the fractures he was in the sole custody of Yard. Rather, as the trial court pointed out neither party suggested that the child was in the sole care of Yard at the time of the fractures. ***See*** Rule 1925(a) Op. at 3; N.T., at 9-11 (Commonwealth stating that Yard, child's mother, and child's great grandmother had access to child during period when child sustained fractures); 20-21 (Yard's counsel listing at least five different individuals, including Yard who had access to child during period when child sustained fractures). Thus, the Commonwealth is not entitled to an inference that Yard caused the fractures. ***Cf. Earnest***, 563 A.2d at 159-60. Additionally, ***Passarelli*** warrants the Commonwealth no relief. There, the trial court permitted the admittance of the child's fractures for a limited purpose – shaken baby syndrome – that was supported by medical testimony. Here, there is no similar evidence or medical testimony.

We find **Commonwealth v. Walter**, 849 A.2d 265, 269-70 (Pa.Super. 2004), instructive. There, this Court vacated a first-degree murder conviction for the death of an infant where the trial court admitted evidence of an unrelated injury without any evidence connecting the defendant to the injury. We concluded that "[t]he absence of any connection between Appellant and the leg injury made this evidence irrelevant." **Walter**, 849 A.2d at 269.

Similarly, here, because there has been no evidence connecting Yard to the rib fractures, they are irrelevant. Furthermore, the absence of a connection between the child's injuries and Yard would improperly suggest a prior bad act and the Commonwealth does not claim any of the Rule 404(b)(2) exceptions to admit such evidence. The trial court acted within its discretion in excluding the evidence until the Commonwealth established a connection.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/22/2025